UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| SIGNATURE FLIGHT SUPPORT LLC, )<br>13485 Veterans Way, Suite 600 )<br>Orlando, FL 32827 )<br>    )<br>    Plaintiff, )<br>    v. )<br>    )<br>JOHNSON CONTROLS, INC., )<br>5757 N. Green Bay Ave. )<br>Milwaukee, WI 53209 )<br>    )<br>    Serve Also: )<br>    CT Corporation System )<br>    Registered Agent )<br>    301 S. Bedford St. Suite 1 )<br>    Madison, WI 53703 ) | CASE NO. _____<br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Signature Flight Support LLC ("Signature") for its Complaint against Defendant Johnson Controls, Inc. ("Johnson Controls") states as follows:

### Nature of Action

1. This is an action for damages arising out of Johnson Controls' supply to Signature of high-expansion fire-fighting foam that contained per- or polyfluoroalkyl substances ("PFAS"). Through its product labeling and official product materials Johnson Controls promoted its high-expansion foam as PFAS-free.

2. After installation of the foam in its fire suppression systems, however, Signature discovered that the foam contained PFAS.

3. Signature incurred significant costs to purchase new high-expansion foam and decontaminate the fire suppression system at one of its facilities. Now, Signature must

do the same for each of its facilities at which Johnson Controls installed or provided the high-expansion foam and will continue to incur additional costs for decontamination and replacement of components that cannot be cleaned, and for disposal of the contaminated high-expansion foam, which Signature must dispose of as a PFAS-containing waste.

## Parties, Jurisdiction, and Venue

4. Signature Flight Support LLC is a Delaware limited liability company with its principal place of business in Florida at 13485 Veterans Way, Suite 600, Orlando Florida 32827. Signature Flight Support LLC has one member: Signature Aviation USA, LLC ("SA USA"), which is a Delaware limited liability company with a principal place of business in Florida. SA USA has two members: (1) Signature Aviation US Holdings, Inc. (a Delaware entity with a principal place of business in Florida) and (2) BBA Aviation Finance (a United Kingdom entity with a principal place of business in the United Kingdom).

5. Johnson Controls is a Wisconsin corporation with its principal place of business in the United States in Wisconsin at 5757 N. Green Bay Ave., Milwaukee, Wisconsin 53209.

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) in that Signature and Johnson Controls (collectively, the "Parties") are citizens of different states and the amount in controversy in this civil action exceeds the sum of $75,000, exclusive of interest and costs, as detailed herein.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) because Defendant is a resident of Wisconsin, and pursuant to 28 U.S.C. §1391(b)(2) because a substantial

part of Defendant's acts and omissions giving rise to the claims asserted in this complaint occurred in this judicial district.

**Factual Background**

8. Signature is a global general aviation services company and operates the world's largest network of fixed-base operations (FBOs).

9. Signature's worldwide network of FBOs delivers essential support service for business and private aviation including ground-handling, refueling, parking, hangarage and a variety of other world-class aviation amenities with exceptional customer service.

10. Upon information and belief, Johnson Controls and one or more of its wholly owned subsidiaries are manufacturers of fire suppression systems and supplies for various industrial applications, which Johnson Controls provides to customers such as Signature.

11. Many of Signature's facilities, some of which Signature constructed and some of which Signature acquired from other aviation services providers, and which total over 200 locations, use fire suppression systems designed to deploy a firefighting foam in the event of a fire to cool the fire and to coat the fuel, preventing further contact with oxygen and thus suppressing combustion.

12. For many years Johnson Controls has contracted with Signature and its predecessors, to supply and install foam for its fire suppression systems.

13. Historically the foam Johnson Controls supplied to Signature was aqueous film-forming foam, also known as AFFF. AFFF is known to contain PFAS, which are a class of manmade chemicals that have been linked to serious health concerns including,

but not limited to, cancer. PFAS are commonly known as "forever chemicals" because they do not break down in the environment.

14. In response to the growing concern about the impact of PFAS chemicals on the environment and individuals exposed to them, and in response to changing regulations across the United States, Signature has been working to convert all hangars within its portfolio from reliance on AFFF to either water or high-expansion foam fire suppression systems, away from reliance on products containing PFAS.

15. For example, during the 2021 legislative session, the Connecticut legislature passed CGS 22a-903a--An Act Concerning the Use of Perfluoroalkyl or Polyfluoroalkyl Substances in Class B Firefighting Foam, which banned most uses of AFFF by October 1, 2021.

16. In response to CGS 22a-093a, Signature elected to convert its fire suppression system at Bradley International Airport ("BDL") in Hartford, Connecticut to a water-based system in two of the three hangars.

17. In the third hangar at BDL, Signature was then using an Ansul Jet-X high expansion foam ("Jet-X Foam") system supplied by Johnson Controls.

18. Johnson Controls had previously contracted to supply or install Jet-X Foam at multiple other Signature facilities throughout the United States, including with the prior owners of facilities Signature later acquired.

19. Johnson Controls had informed Signature that the Jet-X Foam did not contain PFAS.

20. Moreover, on its website and other publication materials, Johnson Controls specifically states, and has historically stated, that the Jet-X Foam is a non-fluorinated foam formulation, *i.e.,* it does not contain PFAS.

4

21. During the conversion process at BDL, Signature tested the Jet-X Foam in place in the third hangar using an independent laboratory, which revealed that the Jet-X foam Johnson Controls previously supplied for BDL Hangar 3 contained PFAS.

22. In order to remain compliant with certain state and federal laws, and to protect the safety of those working in or near its facilities and the environment, Signature (i) removed the contaminated Jet-X Foam from the BDL fire suppression system, (ii) cleaned the system, and (iii) replaced components that could not be cleaned, all to remove the PFAS contamination.

23. Signature also disposed of the contaminated Jet-X Foam consistent with the requirements for disposal of waste containing PFAS.

24. Signature incurred expenses of at least $268,403.96 in these replacement, decontamination, and disposal activities.

25. Signature has either installed the Jet-X Foam in many of its facilities nationwide, or acquired those facilities with the Jet-X Foam already installed/supplied by Johnson Controls, and will continue to incur costs to test the foam installed at these other facilities and decontaminate the fire suppression systems at those facilities in which Jet-X foam containing PFAS was installed, contrary to Johnson Controls' representations that the Jet-X Foam would be PFAS free.

26. Signature demanded that Johnson Controls reimburse it for the cost of testing, decontamination, replacement, and disposal of the contaminated Jet-X foam at its facilities, but Johnson Controls has refused to appropriately compensate Signature.

## COUNT ONE
### Breach of Contract

27. Signature incorporates paragraphs 1-26 as if fully alleged herein.

5

28. Signature and Johnson Controls had valid and binding contracts for Johnson Controls to supply Signature's facilities with fire-fighting foam that did not contain PFAS.

29. Signature has complied with all of its obligations under that contract.

30. Johnson Controls has failed to comply with its obligations.

31. Johnson Controls has breached the contracts by, *inter alia*, supplying the Jet-X Foam containing PFAS after agreeing to supply foam that would be PFAS-free.

32. As a result of Johnson Controls' breach, Signature has sustained real and actual damages.

33. Signature has incurred damages as a direct and proximate cause of Johnson Controls' breach and is entitled to recover damages from Johnson Controls in an amount to be determined at trial, but not less than $268,403.96.

## COUNT TWO
### Negligence

34. Signature incorporates paragraphs 1-33 as if fully alleged herein.

35. Johnson Controls owed a duty to Signature to use reasonable care in supplying a fire-fighting-foam that did not contain PFAS, consistent with Johnson Controls' representations.

36. Johnson Controls breached this duty when it supplied Signature with the Jet-X foam that contained PFAS.

37. As a result of Johnson Controls' negligence, some of Signature's facilities have been contaminated with PFAS causing substantial damage to Signature's property and risking exposure to others who may come in contact with the contaminated Jet-X foam.

38. As a direct and proximate result of Johnson Controls' negligence, Signature has incurred damages and is entitled to recover damages from Johnson Controls in an amount to be determined at trial, but in no event less than $268,403.96.

**COUNT THREE**
**Products Liability**

39. Signature incorporates paragraphs 1-38 as if fully alleged herein.

40. Johnson Controls, at all times relevant hereto, was in the business of selling the Jet-X Foam for fire suppression systems.

41. The Jet-X Foam is unreasonably dangerous beyond the extent contemplated by Signature, because Signature received assurance from Johnson Controls that the Jet-X Foam did not contain PFAS when in fact it did.

42. The Jet-X Foam was defective in design, formula, preparation, assembly, and/or testing at the time Johnson Controls manufactured it.

43. The Jet-X Foam was expected to and did reach Signature without substantial change in condition following manufacture.

44. Signature used the Jet-X Foam in a manner that was intended and expected by Johnson Controls.

45. As a result of these defects, Signature has incurred expenses to remove the Jet-X Foam and decontaminate the fire suppression system at BDL and will incur additional costs to test, remove the foam, and decontaminate the fire suppression systems at the other facilities for which Johnson Controls supplied the Jet-X Foam.

46. Johnson Controls is liable to Signature for its actual, incidental and consequential damages under relevant product liability laws including, but not limited to, Wis. Stat. § 895.047.

## COUNT FOUR
### Breach of Implied Warranty of Merchantability

47. Signature incorporates paragraphs 1-46 as if fully alleged herein.

48. Johnson Controls is, and at all times relevant hereto was, a merchant with respect to the Jet-X Foam.

49. By operation of Fla. Stat. § 672.314, Wis. Stat. § 402.314, and other similar statutes in those jurisdictions in which Johnson Controls installed or supplied Jet-X Foam at a Signature facility, Johnson Controls sold the Jet-X Foam with a warranty that it would be merchantable at the time of purchase.

50. The Jet-X Foam that Johnson Controls supplied to Signature contained PFAS and contaminated the fire suppression system at BDL and the fire suppression systems at an unknown number of Signature facilities in other locations around the country.

51. As a result of this defect, the fire suppression systems have been contaminated with PFAS.

52. As a result of the above-described defects, the Jet-X Foam was not in merchantable condition when sold to Signature, and it was not fit for the ordinary purpose for which such allegedly PFAS-free firefighting foam is used.

53. Johnson Controls breached the implied warranty of merchantability and is liable to Signature for actual, incidental and consequential damages.

## COUNT FIVE
### Breach of Implied Warranty of Fitness for a Particular Purpose

54. Signature incorporates paragraphs 1-53 as if fully alleged herein.

55. At all times relevant hereto, Johnson Controls had reason to know that the intended purpose of the Jet-X Foam was to provide a fire suppression function without risk of exposure to PFAS.

56. Signature relied on Johnson Controls to furnish Jet-X Foam that was fit for this purpose.

57. The Jet-X Foam supplied to Signature contained PFAS.

58. As a result of these defects, the Jet-X Foam has caused and will continue to cause damage to Signature's fire suppression systems.

59. As a result of the above-described defects, the Jet-X Foam was not fit for use for its intended purpose.

60. Johnson Controls breached the implied warranties of fitness for a particular purpose under Fla. Stat. § 672.315, Wis. Stat. § 402.315, and other similar statutes in those jurisdictions in which Johnson Controls installed or supplied Jet-X Foam at a Signature facility, and is liable to Signature for its actual, incidental and consequential damages.

## COUNT SIX
### Breach of Express Warranty

61. Signature incorporates paragraphs 1-60 as if fully alleged herein.

62. At all times relevant hereto, Johnson Controls warranted to Signature that the Jet-X Foam would be PFAS-free.

63. In reliance on this express warranty, Signature purchased the Jet-X Foam.

64. The Jet-X Foam supplied to Signature contained PFAS.

9

65. As a result of the above-described defect, the Jet-X Foam has contaminated Signature's fire suppression systems at BDL and its other facilities.

66. Johnson Controls breached the express warranty and is liable to Signature for its actual, incidental, and consequential damages under applicable law including, but not limited to, Fla. Stat. § 672.313 and Wis. Stat. § 402.313.

## COUNT SEVEN
### Trespass

67. Signature incorporates paragraphs 1-66 as if fully alleged herein.

68. Signature was at all times relevant hereto, in possession of the facilities that contain the fire suppression systems in which the Jet-X Foam was installed.

69. Johnson Controls intended to, and did, supply the Jet-X Foam containing PFAS to Signature, and thus it allowed PFAS to enter and contaminate Signature's facilities.

70. As a result of Johnson Controls supplying Signature with the Jet-X Foam containing PFAS, Signature's facilities were contaminated requiring removal of the Jet-X Foam and decontamination/replacement of the fire suppression systems.

WHEREFORE, Signature demands judgement in its favor against Johnson Controls for its actual, incidental, and consequential damages; pre and post judgment interest; reasonable attorneys' fees and costs; and all other relief that the Court deems just and proper in the premises.

Respectfully submitted,

/*s/ Michael L. Meyer*
Michael L. Meyer (0093190)
J. Maxwell Williams (0099007)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Facsimile: (513) 381-0205

mmeyer@taftlaw.com
mwilliams@taftlaw.com

*Attorneys for Plaintiff Signature Flight Support LLC*

## **JURY DEMAND**

Signature Flight Support LLC demands trial by jury on all issues so triable.

/*s/ Michael L. Meyer*
Michael L. Meyer (0093190)
J. Maxwell Williams (0099007)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Facsimile: (513) 381-0205
mmeyer@taftlaw.com
mwilliams@taftlaw.com

*Attorneys for Plaintiff Signature Flight Support LLC*